# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **KNW Social Enterprise, LLC** : | |
| **6573A Cochran Road** : | |
| **Solon, Ohio 44139,** : | |
| : | Case No. |
| **Plaintiff,** : | |
| : | Judge |
| vs. : | |
| : | |
| **Bioworld Merchandising, Inc.** : | |
| **1159 Cottonwood Lane** : | |
| **Irving, Texas 75038** : | **JURY DEMAND** |
| : | **ENDORSED HEREON** |
| and : | |
| : | |
| **John/Jane Doe Persons or Entities,** : | |
| **names and addresses unknown,** : | |
| : | |
| **Defendants.** : | |

## COMPLAINT

For its Complaint, Plaintiff KNW Social Enterprise, LLC alleges:

## NATURE OF THE ACTION

1. This case arises out of Defendant's knowing and willful infringement of Plaintiff's registered trademark. Plaintiff KNW Social Enterprise, Inc. owns the federal registration for the word mark KEEP NATURE WILD for use on, among other things, apparel and accessories. Defendant Bioworld Merchandising, Inc. used the phrase Keep Nature Wild on apparel while selling the apparel through interstate commerce—including through both online and brick-and-mortar stores—throughout the United States. When KNW's predecessor-in-interest found Bioworld's infringing products for sale on Target's website and objected, Bioworld apologized for the infringement and insisted it would stop selling the infringing products. Despite this admission and promise, Bioworld kept selling the products through other channels both before and after KNW acquired the assets of its predecessor (including the

trademark). When KNW objected to Bioworld's continued infringement, Bioworld said once again it would stop selling the infringing products. It is unclear to date whether Bioworld has actually kept its promise this time, but in any event, KNW is entitled to damages and, to the extent Bioworld continues to sell or may sell infringing products in the future, injunctive relief.

## PARTIES, JURISDICTION, AND VENUE

2.  Plaintiff KNW Social Enterprise, LLC, is an Ohio limited liability company with its principal place of business in Solon, Ohio. All of KNW's members are residents of Ohio.

3.  Defendant Bioworld Merchandising, Inc. is a Texas corporation with its principal place of business in Irving, Texas. Bioworld regularly transacts business in Ohio and throughout the United States, including without limitation by selling goods through online retailers for distribution in Ohio and through brick and mortar retailers for sale in Ohio.

4.  Defendants John/Jane Doe Persons or Entities are unknown natural persons or entities who may have participated in the infringing activities alleged in this Complaint, or for whom Bioworld manufactured or sold the infringing products at issue.

5.  This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, because the claims in this action arise under the laws of the United States.

6.  This Court has personal jurisdiction over Bioworld because the claims in this action arise from Bioworld's (a) transacting business in Ohio; (b) contracting to supply goods in Ohio; (c) causing tortious injury to KNW in Ohio by an act or omission in Ohio; or (d) causing injury to KNW in Ohio by an act or omission outside Ohio, when Bioworld regularly does or solicits business in Ohio, dervies substantial revenue from goods consumed in Ohio, and engages in persistent courses of conduct directed to Ohio (including by regularly selling goods through online retailers for distribution on Ohio and through brick and mortar retailers for sale in Ohio.

2

Further, this Court's exercise of personal jurisdiction over Bioworld is consistent with the United States Constitution.

7. Venue is proper in this district because at least part of the events or omissions giving rise to KNW's claims occurred in this district, and alternatively because Bioworld is subject to personal jurisdiction with respect to this action in this district.

## THE "KEEP NATURE WILD" TRADEMARK

8. Through its brand Keep Nature Wild, KNW designs and sells high-quality outdoor lifestyle themed apparel and accessories.

9. KNW owns a federal trademark registration for the word mark KEEP NATURE WILD, a word mark, in international classes 16, 24, 25, and 26 (the "Trademark"). The Trademark was registered on the principal register January 15, 2019 with Serial Number 87507840. Exhibit A to this Complaint is a true copy of the trademark registration certificate.

10. The original owner of the mark was Keep Nature Wild, Ltd.

11. Through an Asset Purchase Agreement effective May 31, 2024, KNW purchased substantially all of the assets of Keep Nature Wild, Ltd. Among other things, the purchase included all of Keep Nature Wild, Ltd.'s trademarks and other intellectual property, all causes of actions and claims (including claims for infringement of any intellectual property), and all goodwill associated with the business.

12. As part of the asset purchase, Keep Nature Wild, Ltd. executed a written "Assignment of Trademarks" memorializing assignment of the Trademark to KNW. Exhibit B to this Complaint is a true copy of the Assignment of Trademarks. Along with the assignment, and as part of the asset purchase, Keep Nature Wild, Ltd. transferred all goodwill associated with the Trademark to KNW.

3

13. Keep Nature Wild, Ltd. before the asset purchase, and KNW since the asset purchase, have continuously used the Trademark in interstate commerce since (and even before) its registration as the identifier of the source of goods in the applicable international classes, including on shirts, hats, decals, textile bags, and pins.

14. Here are some examples of the shirts on which Keep Nature Wild, Ltd. and KNW have used the Trademark in interstate commerce:



**BIOWORLD'S INFRINGEMENT OF THE TRADEMARK**

15. Bioworld develops, manufactures, and sells (as a wholesaler) branded and licensed products through both online and brick and mortar retail distribution channels.

16. On its website, bioworldmerch.com, Bioworld markets itself as a "global brand growth platform helping partners of all sizes reach consumers at every channel."

17. In or around May 2023, Keep Nature Wild, Ltd. discovered that the retailer Target was selling on its website a t-shirt manufactured and/or wholesaled by Bioworld bearing the phrase "Keep Nature Wild" in an arch surrounding trees with a drawn or sketched appearance:



18. On May 18, 2023, Kevin Schentag (one of Keep Nature Wild, Ltd.'s principals) emailed Target explaining the shirt for sale on its website contained the registered Trademark, provided a link showing the Trademark's registration to Keep Nature Wild, Ltd., and requesting removal of the infringing shirt.

19. Target forwarded the email to Bioworld.

20. On May 25, 2023, Paul Stephens (Bioworld Director of eCommerce) emailed Mr. Schentag apologizing and representing that Bioworld had "removed the listing in our system," and claimed the infringement was unintentional:

> On Thu, May 25, 2023 at 5:15 PM Paul Stephens <pauls@bioworldmerch.com> wrote:
>
> Mr. Schentag:
>
> My name is Paul Stephens and I'm the Director of Ecommerce at Bioworld.
>
> We received you email from Target regarding our "Keep Nature Wild" T-Shirt and trademark infringement concern.
>
> I would like to apologize for this mistake and confirm we have removed the listing in our system and it should show "out of stock" on Target site in a few hours. I'm also working with my contact at Target to fully remove the listing from the site which I hope can happen tomorrow or early next week latest if they are out for the holiday weekend.
>
> Our product is Print on Demand so we do not have any inventory. The graphic is printed on a blank shirt when we receive the order.
>
> Again, please accept our apology as it was unintentional on our part.
>
> Hope you have a safe Memorial Day Weekend.
>
> Paul Stephens / Director of eCommerce
>
> Bioworld Merchandising
>
> 1159 Cottonwood Ln., Irving, TX 75038
>
> 1.888.831.2138 x12797
>
> pauls@bioworldmerch.com / www.bioworldmerch.com
>
> **BIOWORLD**

21. When the t-shirt appeared "out of stock" but still listed on Target's website almost a month later, Mr. Schentag sent Mr. Stephens a follow-up email. Mr. Stephens apologized again, confirmed the first shirt was now indicating "Product Not Available," and acknowledged a second infringing product that he requested Target delist:

> **From:** Paul Stephens
> **Sent:** Friday, June 23, 2023 5:53 AM
> **To:** Kevin Schentag <kevin@keepnaturewild.com>
> **Subject:** Re: Keep Nature Wild trademark on Target.com
>
> Mr. Schentag:
>
> Apologize for this, I did instruct Target to delist the first Target item #87615271 from the link you provided in your first email below, and that is showing "Product Not Available", link below:
>
> https://www.target.com/p/adventure-society-keep-nature-wild-men-s-navy-t-shirt/-/A-87615271?preselect=87615269#lnk=sametab
>
> However, there is a second Target item#87615269 associated with this style that I missed and is also on your latest link below. Saying that, I have requested Target delist this item# as well and will let you know once I receive confirmation. Note it may take until early next week:
>
> https://www.target.com/p/adventure-society-keep-nature-wild-men-s-navy-t-shirt-large/-/A-87615365
>
> Again, I apologize for this issue.
>
> Paul Stephens / Director of eCommerce
> Bioworld Merchandising
>
> BIOWORLD

7

22. Mr. Stephens followed up later that day assuring Mr. Schentag that both items (Target item numbers 87615269 and 87615365) had been removed:

> On Fri, Jun 23, 2023 at 10:08 AM Paul Stephens <pauls@bioworldmerch.com> wrote:
>
> Mr. Schentag:
>
> Update: Have received confirmation from Target that the remaining item# was marked as Not Available and should be reflected on site later today.
>
> Have a nice weekend,
>
> Paul Stephens / Director of eCommerce
> Bioworld Merchandising
>
> BIOWORLD

23. Despite representing that it had "removed the listing in [its] system" and knowing that Keep Nature Wild, Ltd. owned the registered Trademark, Bioworld continued to sell products that infringed the Trademark. It just stopped selling them through Target.

24. For example, after Mr. Stephens' June 23, 2023 email, Bioworld continued to sell the navy blue "Keep Nature Wild" t-shirt through the retailer Kohl's, both online and in its brick-and-mortar stores (including stores located in this judicial district).

25. The t-shirt was falsely marketed on Kohl's website as a "licensed" product.

26. On June 3 2024, KNW's president Keith Schwartz emailed Mr. Stephens objecting to Bioworld's ongoing sale of infringing products through Kohl's.

27. Mr. Schwartz requested that Bioworld take down and cease the sales of all products featuring the Trademark, regardless of the product, retailer, website, or location.

28. Mr. Schwartz also requested a list of all Bioworld products sold with the Trademark, including identity of retailers.

8

29. Mr. Schwartz also requested a list of sales generated by Bioworld, as well as Kohl's, Target, or any other retailers of any Bioworld products featuring the Tradermark.

30. Bioworld has not provided either of the requested lists.

31. This time, rather than respond himself as he had in the past, Mr. Stephens (or somebody else at Bioworld) forwarded Mr. Schwartz's email to Bioworld's legal counsel.

32. Bioworld's legal counsel represented that Bioworld has stopped its sales of clothing bearing the phrase Keep Nature Wild.

33. While it appears that the navy blue t-shirt sold at Kohl's has been removed from the kohls.com website, without discovery, KNW does not know whether and if so, when, the shirts were removed from Kohl's brick and mortar stores. KNW will learn this information through written, document, and deposition discovery.

34. The infringing shirts that Bioworld sold through Target and Kohl's were cheaper, lower-quality products the shirts that KNW and its predecessor have sold bearing the Trademark.

35. Without discovery, KNW lacks sufficient information to identify all retail channels through which Bioworld has sold infringing products or to identify all infringing products that Bioworld has sold. KNW will learn this information through written, document, and deposition discovery.

36. Without discovery, KNW lacks sufficient information to know whether Bioworld manufactured and sold the infringing products for other persons or entities (or "partners," to use the term that Bioworld uses on its website). KNW will learn this information through written, document, and deposition discovery.

## COUNT ONE: TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114(1)

37. KNW incorporates the above allegations by reference as if fully restated here.

38. KNW and its predecessor have sold consumer goods including shirts, hats, decals, and textile bags in United States interstate commerce through online direct-to-consumer, online retail, and brick-and-mortar retail channels under the KEEP NATURE WILD Trademark since at least October 29, 2018, and have used the Trademark continuously in commerce since that time.

39. KNW and its predecessor have advertised their branded items on their website and through social media channels, and they have a significant number of customers and social media followers.

40. KNW and its predecessor have invested substantial time, effort, and financial resources promoting the Trademark in connection with the marketing and sale of their goods in interstate commerce. Through widespread and favorable public acceptance and recognition, KNW's Trademark has become an asset of substantial value as a symbol of KNW, its quality products, and its goodwill. The consuming public recognizes KNW's Trademark and associates it with KNW's business.

41. KNW's Trademark is inherently distinctive as applied to KNW's goods that bear the Trademark.

42. Notwithstanding KNW's established rights in the KEEP NATURE WILD Trademark, Bioworld adopted and used the exact mark in interstate commerce in connection with the sale and offering for sale of t-shirts (and potentially other items as discovery reveals).

43. KNW's predecessor used the Trademark in interstate commerce and registered the Trademark on the USPTO's Principal Register before Bioworld began using the mark.

44. Without KNW's or its predecessor's consent, Bioworld used the mark in 2023 and 2024 (and potentially earlier years as discovery reveals) to sell some of the same goods on which KNW and its predecessor use the Trademark.

45. Bioworld's use of the mark Keep Nature Wild to sell its goods was and is likely to mislead the public into concluding that Bioworld's goods originate with or are licensed or authorized by KNW, which has damaged and will continue to damage both KNW and the public. KNW has no control over the quality of goods that Bioworld sells and because of the source confusion caused by Bioworld, KNW has lost control over its valuable goodwill.

46. Bioworld committed some or all of its infringement of the Trademark while it had actual knowledge of the Trademark's federal registration.

47. On information and belief, Bioworld has advertised and offered its goods for sale using KNW's Trademark with the intent to mislead, deceive, or confuse consumers as to the origin of Bioworld's goods and the intent to trade on the reputation and goodwill of KNW's brand. For example, Bioworld's continued sale of infringing items after it represented it had "removed the listing in [its] system" and its marketing of an infringing item on Kohls.com as a "licensed" indicates suggest such intent.

48. Bioworld's unauthorized use of KNW's trademark in interstate commerce constitutes trademark infringement under 15 U.S.C. § 1114(1).

49. Bioworld's use of KNW's Trademark constitutes willful, deliberate, and intentional trademark infringement.

50. As a direct and proximate result of Bioworld's trademark infringement, KNW has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Bioworld has unfairly acquired and will continue to acquire income, profits, and goodwill.

51. If Bioworld continues to sell goods bearing KNW's Trademark, Bioworld will cause KNW further irreparable injury.

52. To the extent Bioworld has committed its infringing acts for or in conjunction with one or more of the Doe Defendants, such Doe Defendants are also liable for trademark infringement under 15 U.S.C. § 1114(1).

### COUNT TWO – COUNTERFEITING UNDER 15 U.S.C. § 1114(1)

53. KNW incorporates the above allegations by reference as if fully realleged here.

54. Bioworld's manufacture and sale in commerce of goods as described above constitutes counterfeiting under 15 U.S.C. § 1114(1), because Bioworld used an exact copy of KNW's federally registered Trademark (i.e., the phrase Keep Nature Wild) to sell at least some of the same goods (albeit of inferior quality) for which KNW owns a registration of the Trademark and on which KNW uses the Trademark to sell goods (i.e., T-shirts).

55. Bioworld's use of KNW's exact Trademark on these goods constitutes willful, deliberate, and intentional counterfeiting of KNW's Trademark and goods.

56. As a direct and proximate result of Bioworld's counterfeiting, KNW has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Bioworld has unfairly acquired and will continue to acquire income, profits, and goodwill.

57. If Bioworld continues to sell t-shirts bearing KNW's exact Trademark, Bioworld will cause KNW further irreparable injury.

58. To the extent Bioworld has committed its counterfeiting for or in conjunction with one or more of the Doe Defendants, such Doe Defendants are also liable for counterfeiting under 15 U.S.C. § 1114(1).

## **COUNT THREE – FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125**

59. KNW incorporates the above allegations by reference as if fully realleged here.

60. By using KNW's Trademark in commerce, Bioworld has misrepresented and falsely described to the general public the origin and source of the infringing goods and created a likelihood of confusion by purchasers as to the source of the goods.

61. Bioworlds' unauthorized and unlicensed manufacturing, advertising, distributing, offering for sale and/or selling the infringing goods in interstate commerce has created express and implied misrepresentations that KNW or its predecessor created, authorized, or approved those goods, which has damaged both KNW and the public and which will profit Bioworld.

62. Bioworld's unauthorized marketing and sale of the infringing goods in interstate commerce using KNW's Trademark constitutes a use of a false designation of origin or false representation that wrongfully and falsely designates Bioworld's products as originating from or connected with KNW, in violation of 15 U.S.C. § 1125(a).

63. On information and belief, Bioworld has advertised and offered its goods for sale using KNW's Trademark with the intent to mislead, deceive, or confuse consumers as to the origin of Bioworld's goods and the intent to trade on the reputation and goodwill of KNW's brand.

64. As a direct and proximate result of Bioworld's acts of unfair competition through its false designation of origin, KNW has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Bioworld has unfairly acquired and will continue to unfairly acquire income, profits, and goodwill.

65. If Bioworld continues to sell goods falsely indicating Bioworld's products as originating from or connected with KNW, Bioworld will cause KNW further irreparable injury.

66. To the extent Bioworld has committed these acts for or in conjunction with one or more of the Doe Defendants, such Doe Defendants are also liable for unfair competition and false designation of origin trademark infringement under 15 U.S.C. § 1114(1).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff KNW Social Enterprise, LLC demands judgment in its favor and against Defendants as follows:

a. Awarding compensatory damages in an amount to be determined;

b. Awarding disgorgement of Defendants' profits in an amount to be determined;

c. Ordering an accounting of all Defendants' sales of products infringing Plaintiff's KEEP NATURE WILD Trademark and assessing damages and profits as 15 U.S.C. § 1117 provides;

d. Awarding all exemplary, statutory, or multiplied damages available under the law;

e. Awarding their costs, expenses, and attorneys' fees in prosecuting this action;

f. Enjoining Defendants from infringing Plaintiff's KEEP NATURE WILD Trademark; and

g. Granting all other relief this Court deems proper.

Respectfully submitted,

/s/ Barton R. Keyes
Barton R. Keyes         (0083979)
Cooper Elliott
305 West Nationwide Boulevard
Columbus, Ohio 43215
(614) 481-6000
(614) 481-6001 (Facsimile)
bartk@cooperelliott.com

Attorney for Plaintiff
KNW Social Enterprise, LLC

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

                                            /s/ Barton R. Keyes