IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KNW SOCIAL ENTERPRISE, LLC, | ) | CASE NO. 1:24-CV-01382-DAR |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DAVID A. RUIZ |
| vs. | ) | |
| | ) | MAGISTRATE JUDGE |
| BIOWORLD MERCHANDISING, INC., ET AL., | ) | JONATHAN D. GREENBERG |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | | |

This matter has been referred to the undersigned for mediation and resolution of the parties' disagreement as to the final terms of the settlement agreement. (See Doc. No. 21; Non-document Order dated August 19, 2026.)

## I. BACKGROUND

A mediation conference was held November 14, 2025, before the undersigned. No resolution occurred and the parties continued to negotiate. (Doc. No. 30.) Zoom status conferences were held on April 21, 2026, and May 21, 2026, and the parties continued to negotiate. (Doc. No. 39, 41.) On June 17, 2026, an in-person mediation was held, and the parties believed they reached an agreement. (Doc. No. 43.) The parties placed material terms on the record at that time. (Doc. No. 45.)

On August 19, 2026, Plaintiff KNW Social Enterprise, LLC ("KNW") moved for leave to file documents under seal, indicating it intended to file a motion to enforce the settlement agreement reached at mediation. (Doc. No. 49.) A status conference was held with the parties and the undersigned on August 25, 2026. (Doc. No. 50.)

On August 31, 2026, KNW filed under seal Motion to Enforce Settlement.[1] (Doc. No. 52.) On September 25, 2026, BioWorld Merchandising, Inc. ("BioWorld") filed under seal Memorandum in Opposition to Plaintiff's Motion to Enforce Settlement Agreement and Cross-Motion to Enforce Settlement. (Doc. No. 54.) On October 7, 2026, KNW filed a reply brief. (Doc. No. 56.)

## II. LAW AND ANALYSIS

### A. Settlement Agreement

"A federal court has inherent power to enforce settlement agreements that have been voluntarily entered into by the principals." *Hitachi Med. Sys. Am., Inc. v. Livingston MRI, LLP*, No. 5:09CV932, 2010 WL 1387301, at *2 (N.D. Ohio Apr. 1, 2010); citing *Therma-Scan, Inc. v. Thermoscan, Inc.,* 217 F.3d 414, 419 (6th Cir.2000); *Tabbaa v. Koglman,* 149 Ohio App.3d 373, 377, 777 N.E.2d 338 (Ohio Ct.App. 8th Dist.2002). This authority is not diminished by the fact that the "agreement has not been reduced to writing." *Brock v. Scheuner Corp.,* 841 F.2d 151, 153 (6th Cir.1988); *Bowater North America Corp. v. Murray Machinery, Inc.,* 773 F.2d 71, 77 (6th Cir.1985).

"Before enforcing a settlement, a district court must conclude that agreement has been reached on all material terms." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645-46 (6th Cir. 2001). In assessing whether an agreement has been reached, federal courts have recognized that "[s]ettlement agreements are a type of contract subject to principles of state contract law." *Reed v. Wehrmann*, 159 F. Supp. 2d 700, 704 (S.D. Ohio 2001); *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992) ("Thus, '[w]hether [a settlement agreement] is a valid contract between the parties is determined by reference to state substantive law governing contracts generally.'") (quoting *White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir. 1986)). In this case, both parties cite Ohio law. (*See* Doc. No. 52; Doc. No. 54.)

---

[1] Because the briefs are filed under seal, the undersigned does not include a summary of the parties' arguments.

In Ohio, a settlement agreement, like any other contract, requires "a meeting of the minds as well as an offer and an acceptance thereof." *Jones v. City of Cleveland*, No. 1:19-CV-01275, 2020 WL 3270706, at *5 (N.D. Ohio June 17, 2020), citing *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376 (1997); *See also Spoerke v. Abruzzo*, No. 2013–L–093, 2014 WL 1350143, at *5 (Ohio Ct. App. 11th Dist. Mar. 31, 2014) ("To constitute a valid contract, there must be an offer on the one side and an acceptance on the other resulting in a meeting of the minds of the parties.").

With regard to the meeting of the minds requirement, "[a]s in most jurisdictions, Ohio law does not require contracting parties to share a subjective meeting of the minds to establish a valid contract; otherwise, no matter how clearly the parties wrote their contract, one party could escape its requirements simply by contending that it did not understand them at the time." *Jones*, 2020 WL 3270706, *6, citing *216 Jamaica Avenue, LLC v. S & R Playhouse Realty Co.*, 540 F.3d 433, 440 (6th Cir. 2008). Instead, Ohio law requires "that the terms of the agreement establish an objective meeting of the minds, which is to say that the contract was clear and unambiguous." *Id.*; *Bruzzese v. Chesapeake Expl., LLC*, 998 F. Supp. 2d 663, 673 (S.D. Ohio 2014) ("[A]n objective standard applies to the determination of whether there was a meeting of the minds."). In determining whether contract terms are ambiguous, "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St.3d 635, 638 (1992) (quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978) (paragraph two of the syllabus)). "[S]ettlement agreements are highly favored in the law." *Cont'l W. Condo. Unit Owners Ass'n v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502 (1996).

Here, there is no dispute that a settlement was reached on June 17, 2026. (See Doc. No. 52, 54.) The parties' only dispute is what entities are released in the settlement. The undersigned finds the material terms as reflected in the June 17, 2026 transcript are clear and unambiguous. (See Doc. No. 45.) Regarding released parties, the transcript reflects, "And the releases of claims will be in favor of BioWorld

Merchandising and on behalf of both the current Plaintiff KNW and the proposed substituting Plaintiff Black Crow Licensing." (Doc. No. 45, p. 4.) Both counsel for BioWorld and BioWorld's corporate representative confirmed they heard the material terms, understood the material terms, and agreed to the material terms. (*Id.*, pp.5-6.)

BioWorld's argument that KNW is attempting to "carve out" the Doe Defendants, and therefore additional entities should be included in the release, is not well taken. The parties expressly agreed on the record to the release of BioWorld. No other entities were included in the material terms of the agreement. Further, no other entities were joined and substituted for the Doe Defendants. The retailers BioWorld seeks to include were never named as parties, never served with process, and never represented by attorneys as part of the instant lawsuit. Doe Defendants are not parties to a lawsuit. *See Travis v. Whitmer,* No. 1:23-CV-830, 2025 WL 2469263, at *2 (W.D. Mich. July 28, 2025), *report and recommendation adopted,* No. 1:23-CV-830, 2025 WL 2466626 (W.D. Mich. Aug. 27, 2025), thus, no other entities need to be included in the settlement agreement to effectively end the lawsuit.

BioWorld has not shown that the retailers at issue are corporate affiliates of BioWorld such that they should be subject to a release based on their corporate affiliation, which can be standard in a release. The Sixth Circuit defined "affiliate" as a relationship in which one party has a substantial or unusual amount of control over the other. *Yatsko v. Graziolli*, No. 18-CV-814, 2022 WL 1136780, at *2 (N.D. Ohio Apr. 18, 2022), citing *Pope v. Carl*, 742 F. App'x 123, 12829 (6th Cir. 2018); *see also Bond Safeguard Ins. Co. v. Dixon Builders I, LLC*, 2012-Ohio-3313, 2012 WL 2988790, at *8 (12th Dist. 2012) (interpreting "affiliate" to require control). Here, BioWorld suggests nothing more than a contractual relationship with the non-party retailers, not a corporate relationship with the level of control contemplated to be considered an affiliate for purposes of a release.

For the foregoing reasons, the undersigned recommends GRANTING KNW's Motion to Enforce Settlement Agreement (Doc. No. 52, 53) and DENYING BioWorld's Cross-Motion to Enforce Settlement Agreement (Doc. No 54).

**B. Request for Fees and Interest**

KNW requests interest and its attorney fees and expenses associated with moving to enforce the settlement. (Doc. No. 52 at 11.) BioWorld argues that KNW's request should be denied because it has not repudiated the settlement, but consistently recognized that an agreement exists and sought signature on a written settlement agreement documenting the terms of the settlement. (Doc. No. 54 at 18.) BioWorld contends payment was due within 30 days of executing a written settlement agreement, so payment is not yet due. (*Id*. at 19.)

The undersigned recognizes that courts in the Sixth Circuit have permitted the recovery of prejudgment interest and attorney's fees for a party's breach of a settlement agreement. *Jackson v. Reliance Constr. Servs., LLC*, No. 1:20-CV-799, 2023 WL 4933269 (S.D. Ohio Aug. 2, 2023), citing *Chao v. Am. Nat'l Fleet Servs, Inc.*, No. 1:08-cv-65, 2008 WL 2704410, at *1-3, 2008 U.S. Dist. LEXIS 51244, at *3 (N.D. Ohio July 3, 2008). Here, however, BioWorld has not disclaimed the settlement, rather it has acknowledged an agreement exists. Further, the June 17, 2026 transcript states, "[p]ayment will be within 30 days." (Doc. No. 45 at 4.) It is unclear whether payment is due within 30 days of June 17, 2026, or within 30 days of a signed written settlement agreement, or another date altogether. It is unclear whether payment is overdue or not.

Accordingly, the undersigned recommends DENYING KNW's motion for interest and attorney fees and expenses.

## III. CONCLUSION

For the foregoing reasons, the undersigned recommends GRANTING KNW's Motion to Enforce Settlement (Doc. No. 52, 53), DENYING BioWorld's Cross-Motion to Enforce Settlement Agreement (Doc. No. 54), and DENYING KNW's motion for interest and attorney fees and expenses.

Date: October 30, 2026

*s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**